1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

| | | |
|---|---|---|
| GREGG ATHERTON R.,[1] | ) | Case No. CV 19-05436-AS |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND** |
| | ) | |
| v. | ) | **ORDER OF REMAND** |
| | ) | |
| ANDREW SAUL, Commissioner | ) | |
| of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is remanded for further administrative action consistent with this Opinion.

//

//

//

//

---

[1]    Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**PROCEEDINGS**

On June 21, 2019, Plaintiff filed a Complaint seeking review of the denial of his applications for Disability Insurance Benefits and Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 16-17). On January 2, 2020, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 25-26). On April 1, 2020, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 27).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Applications filed on April 27, 2011:

On April 27, 2011, Plaintiff, formerly employed as a bagger in a market, a janitor in a spa, and a telemarketer (see AR 69-70, 180, 386, 606, 623-26), filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging a disability since October 1, 2010. (See AR 128-40). Plaintiff's applications were denied initially on August 30, 2011, and on reconsideration on March 6, 2012. (See AR 86-91, 93-97).

On January 9, 2013, Plaintiff, represented by counsel, and vocational expert Lynne Tracy testified at a hearing before the

2

Administrative Law Judge ("ALJ"), Sally C. Reason ("ALJ Reason").  (See AR 67-81).  On January 30, 2013, ALJ Reason issued a decision denying Plaintiff's requests for benefits.  (See AR 28-37).  Applying the five-step sequential process, ALJ Reason found at step one that Plaintiff had not engaged in substantial gainful activity since October 1, 2010.  (AR 30).  At step two, ALJ Reason determined that Plaintiff had the severe impairments of correctable vision and mood disorder, not otherwise specified.  (AR 30-31).[2]  At step three, ALJ Reason determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in the regulations.[3]  (AR 31-33).  ALJ Reason then found that Plaintiff had the residual functional capacity ("RFC")[4] to perform light work[5] with certain limitations.  (AR 33-36).  At step four, ALJ Reason determined that Plaintiff was able to perform past relevant work as a cleaner as actually and generally performed (AR 36), and therefore found that Plaintiff was not under a disability as defined in the Social Security Act from October 1, 2010, through the date of the ALJ's decision on January 30, 2013.  (Id.).

---

[2]  ALJ Reason determined that Plaintiff's other impairments -- difficulty using hands, and history of asthma -- were nonsevere.  (AR 31).

[3]  The ALJ specifically considered whether Plaintiff's mental impairment met or medically equaled the criteria of Listing 12.04 (depressive, bipolar and related disorders) and concluded that it did not.  (AR 31-33).

[4]  A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[5]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

The Appeals Council denied Plaintiff's request for review of ALJ Reason's decision on April 25, 2014.  (AR 10-14).

Applications filed on February 13, 2015:

On February 13, 2015, Plaintiff filed new applications for Disability Insurance Benefits and Supplemental Security Income, again alleging a disability since October 1, 2010.  (See AR 574-86). Plaintiff's applications were denied initially on September 4, 2015, and on reconsideration on April 13, 2016.  (See AR 487-88, 490-93).

On February 27, 2018, Plaintiff, represented by counsel, and vocational expert Aida Worthington testified at a hearing before ALJ Loranzo Fleming ("ALJ Fleming").  (See AR 378-405).  On May 22, 2018, ALJ Fleming issued a decision denying Plaintiff's requests for benefits. (See AR 991-1002).  Prior to addressing the five-step sequential process, ALJ Fleming found that the Plaintiff had proven a change in circumstance by alleging a disability resulting from schizoaffective disorder (a mental disorder not previously considered), and therefore had rebutted the presumption of continuing non-disability flowing from Judge Reason's decision. (AR 994).  Accordingly, ALJ Fleming "[did] not fully adopt the [RFC] from" ALJ Reason's decision.  (Id.).  At step one, ALJ Fleming found that Plaintiff had not engaged in substantial gainful activity since October 1, 2010.  (Id.).  At step two, ALJ Fleming determined that Plaintiff had the severe impairments of degenerative disc disease and schizophrenia.  (AR 994-95).  At step three, ALJ Fleming determined that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations.[6] (AR 995-96).

ALJ Fleming then found that Plaintiff had the RFC to perform medium work[7] with the following limitations: can lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently; can sit, stand and/or walk 6 hours in an 8-hour workday; limited to simple, routine tasks with the ability to follow detailed instructions; can interact/respond appropriately with the public, coworkers and supervisors; can respond appropriately to routine changes in the workplace; and can avoid ordinary workplace hazards and can view a computer screen.  (AR 996-1001).

At step four, ALJ Fleming found that Plaintiff was able to perform past relevant work as a bagger, housekeeping cleaner and telephone solicitor as actually and generally performed.  (AR 1001).  Accordingly, ALJ Fleming found that Plaintiff had not been under a disability as defined in the Social Security Act from October 1, 2010, through the date of the ALJ's decision on May 22, 2018.  (AR 1339).

The Appeals Council denied Plaintiff's request for review of ALJ Fleming's decision on April 19, 2019.  (AR 982-87).  Plaintiff now seeks

---

[6]     The ALJ specifically considered whether Plaintiff's physical impairment met or medically equaled the criteria of Listing 1.04 (disorders of the spine) and whether Plaintiff's mental impairment met or medically equaled the criteria of Listing 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders), and concluded that they did not.  (AR 995-96).

[7]     "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

judicial review of ALJ Fleming's decision, which stands as the final decision of the Commissioner.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence.  <u>See</u> <u>Brewes v. Comm'r</u>, 682 F.3d 1157, 1161 (9th Cir. 2012).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Revels v. Berryhill</u>, 874 F.3d 648, 654 (9th Cir. 2017).  To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted).  As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006).[8]

//

//

//

---

[8]    The harmless error rule applies to the review of administrative decisions regarding disability.  <u>See</u> <u>McLeod v. Astrue</u>, 640 F.3d 881, 886-88 (9th Cir. 2011); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that ALJ Fleming erred in: (1) failing to find that Plaintiff had the severe impairment of schizoaffective disorder; (2) failing to find that Plaintiff's mental impairment met Listing of Impairments 12.03; (3) failing to properly assess the opinions of Plaintiff's treating psychiatrists, the consultative examiner, and the State Agency physicians; and (4) rejecting Plaintiff's subjective symptom testimony. (See Joint Stip. at 3-8, 10-14, 21-24, 26-27).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's first claim - that ALJ Fleming erred in failing to find that Plaintiff had the severe impairment of schizoaffective disorder - does not have merit, and Plaintiff's fourth claim - that ALJ Fleming erred in failing to provide clear and convincing reasons for rejecting Plaintiff's testimony about his symptoms and limitations - warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's fourth claim, the Court will not address Plaintiff's claims that ALJ Fleming erred in failing to find that Plaintiff's mental impairment met Listing of Impairments 12.03, and that ALJ Fleming erred in failing to properly assess the opinions of Plaintiff's treating psychiatrists, the consultative examiner, and the State Agency physicians.

**A.   ALJ Fleming's Error in Failing to Find that Schizoaffective Disorder was a Severe Impairment was Harmless**

Plaintiff asserts that ALJ Fleming failed to find that Plaintiff had the severe impairment of schizoaffective disorder. (See Joint Stip. at 3-5).   Defendant asserts that any error by ALJ Fleming in failing to find that Plaintiff's severe mental impairment was schizoaffective disorder was harmless.  (See Joint Stip. at 5-6).[9]

The administrative record contains evidence that Plaintiff was diagnosed with schizoaffective disorder.[10]  According to Larisa Levin,

---

[9]     Defendant implicitly concedes that the ALJ erred in failing to find that Plaintiff had the severe impairment of schizoaffective disorder.

As discussed below, the record contains sufficient evidence that Plaintiff had the severe impairment of schizoaffective disorder. See 20 C.F.R. §§ 404.1520(c), 416.921(a) (a severe impairment is one that significantly limits the physical or mental ability to perform basic work activities); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005)(An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has not more than a minimal effect on the ability to do basic work activities."); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir.  1996)("[T]he two-step inquiry is a de minimis screening device to dispose of groundless claims.").

[10]   "Schizoaffective disorder is a chronic mental health condition characterized primarily by symptoms of schizophrenia, such as hallucinations or delusions, and symptoms of a mood disorder, such as mania and depression."  Symptoms include hallucinations, delusions, disorganized thinking, depressed mood (if depression is mood disorder), and manic behavior (if bipolar disorder is mood disorder). www.nami.org/About Mental-Illness/Mental-Health-Conditions/Schizoaffective-Disorder; see also American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 5th Ed., 99, 105 (2013) (the diagnostic criteria for schizoffective disorder are:  "A.  An interrupted period of illness during which there is a major mood episode (major depressive or manic) concurrent with Criterion A of schizophrenia." [The major depressive episode must include depressed mood.]; "B. Delusions or hallucinations for 2 more weeks in the absence of a major mood episode (depressive or manic during the lifetime duration of the illness."; "C. Symptoms that meet criteria for a major

(continued...)

M.D., a psychiatrist at the Hollywood Mental Health Center, Plaintiff was diagnosed with schizoaffective disorder on May 19, 2014. (AR 907, 910 [Evaluation Form for Mental Disorders dated June 11, 2015]).[11]   On May 20, 2015, Dr. Levin stated that Plaintiff was being treated for auditory hallucinations, depression and insomnia, and that Plaintiff was prescribed antidepressant and anti-psychotic medications.   (AR 826-27).   In an Evaluation Form for Mental Disorders dated June 11, 2015, (prepared following an examination of Plaintiff on May 28, 2015), Dr. Levin stated that Plaintiff reported thought disturbances, auditory hallucinations, chronic depression, severe paranoia, mistrust, delusions and "depressive symptoms which cause him to isolate and avoid people," and diagnosed Plaintiff with, inter alia, schizoaffective disorder. (AR 907-10). In an Evaluation Form for Mental Disorders dated November 2, 2015, (prepared following an examination of Plaintiff on September 21, 2015), Dr. Levin stated that Plaintiff reported the same  symptoms as before and again diagnosed Plaintiff with, inter alia, schizoaffective disorder.  (AR 913-16).  On May 18, 2017 and September 14, 2017, Dr. Levin noted Plaintiff's schizoaffective disorder.  (AR 949-50, 953-54).

_____

[10]   (...continued)
mood episode are present for the majority of the total duration of the active and residual portions of the illness."; "D.  The disturbance is not attributable to the effects of a substance (e.g., a drug of abuse, a medication) or another medical condition."; "Criteria A of Schizophrenia includes: A. Two (or more) of the following, each present for a significant portion of during during a 1-month period (or less if successfully treated).  At least one of these must be (1),(2), or (3). 1. Delusions.  2. Hallucinations.  3.  Disorganized speech (e.g, frequent derailment or incoherence).  4.  Grossly disorganized or catatonic behavior.  5.  Negative symptoms (i.e. diminished emotional expression or avolution).").

[11]   The Court has not been able to locate any document in the administrative record supporting Dr. Levin's statement that Plaintiff was *first diagnosed* with schizoaffective disorder on May 19, 2014.

On December 7, 2017, another psychiatrist, Alisa Sabshin, M.D., noted Plaintiff's schizoaffective disorder.  (AR 928 [Medical Release Consent ["Client suffers with mental illness which impairs his ability to access transportation.  Client's diagnosis is schizoaffective disorder."]).  On January 10, 2018, psychiatrist Margarita Krasnova, M.D., also noted Plaintiff's schizoaffective disorder.  (AR 979).

Although ALJ Fleming found that the Plaintiff had proven a change in circumstance by alleging a disability resulting from schizoaffective disorder (a mental disorder not previously considered), the ALJ found that Plaintiff had the severe impairment of schizophrenia (AR 994-95),[12] rather than schizoaffective disorder.

Although the ALJ erred in failing to find Plaintiff had the severe impairment of schizoaffective disorder, the error was harmless.  <u>See</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038(9th Cir. 2008)(an ALJ's error

---

[12]    The AlJ noted that Plaintiff had alleged that schizophrenia limited his ability to work (AR 599 [undated Disability Report – Adult] because he suffers hallucinations and extreme anxiety, is unable to be around people, becomes overwhelmed easily, and is unable to function at all (AR 615 [undated Function Report – Adult]. (AR 996).  In March 2016, Plaintiff reported that he suffers from schizophrenia to Raymond Yee, M.D., the psychiatric consultative examiner. (AR 922).

"Schizophrenia is a serious mental illness that interferes with a person's ability to think clearly, manage emotions, make decisions and relate to others. . . .  To be diagnosed with schizophrenia, a person must have two or more of the following symptoms occurring persistently in the context of reduced functioning: Delusions[;] Hallucination[;] Disorganized speech[;] Disorganized or catatonic behavior; [and] Negative Symptoms[.]" <u>www.nami.org/About</u>-Mental-Illness/Mental-Health-Conditions/Schizophrenia; <u>see</u> <u>also</u> <u>www.mayoclinic.org/diseases-conditions/schizophrenia/</u>symptoms-causes/syc-2035443 ("Schizophrenia is a serious mental disorder in which people interpret reality abnormally.  Schizophrenia may result in some combination of hallucinations, delusions, and extremely disordered thinking and behavior that impairs daily functioning, and can be disabling.").

is harmless "when it is clear from the record . . . that it was 'inconsequential to the ultimate nondisability determination.'"); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will not be reversed for errors that are harmless.").

In assessing Plaintiff's RFC, ALJ Fleming considered all of the limitations that Plaintiff stated were caused by mental illness, including (1) Plaintiff's statements in the Adult Function Report that he is not able to work because he suffers hallucinations and extreme anxiety, is unable to be around people, becomes overwhelmed easily, is unable to function at all, can pay attention for a maximum of 10 minutes, and does not follow written or spoken instructions well (<u>see</u> AR 996, citing AR  615, 620); (2) Plaintiff's hearing testimony that he sees faces on blank walls and talks to them (<u>see</u> AR 996, relying on AR 397-98); and (3) the psychiatric evidence in the record (<u>see</u> AR 997-1001).  Although Plaintiff asserts that "the combination of depressive and psychotic symptoms as a result of schizoaffective disorder significantly impacted [P]laintiff's functioning" (Joint Stip. at 5), Plaintiff has not pointed to any evidence of functional limitations due to schizoaffective disorder that would have impacted ALJ Fleming's determination about Plaintiff's RFC.  <u>See Lewis v. Astrue</u>, 498 F.3d 909, 911 (9th Cir. 2007)("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4.  As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."); <u>Burch</u>, 400 F.3d at 682-84 (ALJ's failure to find that the claimant's obesity was a severe impairment was harmless error:  "Based on the record, the ALJ adequately considered [the claimant's] obesity in his RFC determination.  The claimant has not set forth, and there is not

evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider."); see also Koch v. Berryhill, 720 Fed.Appx 361, 364 (9th Cir. 2017)("Although the ALJ erred by not considering arthritis at step two and not finding that varicose veins were a severe impairment, these errors were harmless because they did not prejudice [the claimant] at any step of the sequential analysis.").

The Court finds ALJ Fleming's error in failing to find that schizoaffective disorder was a severe impairment to be harmless.

**B.    ALJ Fleming Failed to Provide Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Symptom Testimony**

Plaintiff asserts that ALJ Fleming did not provide clear and convincing reasons for rejecting Plaintiff's testimony about his symptoms and limitations. (See Joint Stip. at 22-24, 26-27). Defendant asserts that ALJ Fleming provided proper reasons for discounting Plaintiff's testimony. (See Joint Stip. at 24-26).

1.    Legal Standard

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo, 871 F.3d at 678.   First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Id. (citing Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).   "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it

could reasonably have caused some degree of the symptom." Id. (emphasis in original)(citation omitted).  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."  Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity.  Id. (citation omitted); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.").  "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases."  Garrison, 759 F.3d at 1015 (citation omitted).

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." Soc. Sec. Ruling ("SSR")

16-3p, 2017 WL 5180304, at *3.[13] SSR 16-3p eliminated the term "credibility" from the Agency's sub-regulatory policy. However, the Ninth Circuit Court of Appeals has noted that SSR 16-3p:

> makes clear what [the Ninth Circuit's] precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo, 871 F.3d at 678 n.5 (quoting SSR 16-3p)(alterations omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider: "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at

---

[13]   SSR 16-3p, which became effective on March 28, 2016, and superseded SSR 96-7p, is applicable to this case because SSR 16-3p was in effect at the time of the Appeals Council's denial of Plaintiff's request for review on April 19, 2019. 20 C.F.R. §§ 404.1529 and 416.929, the regulations on evaluating a claimant's symptoms, including pain, have not changed.

1284.; <u>accord</u> <u>Burrell</u>, 775 F.3d at 1137.  However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented.  <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1227 (9th Cir. 2009)(citation omitted).

The ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008)(citation omitted); <u>see</u> <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 493 (9th Cir. 2015)("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain;" citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it."  <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

2.   <u>Plaintiff's Subjective Statements and Testimony</u>

At the January 9, 2013 administrative hearing, Plaintiff testified that he is 44 years old and has a GED.  (AR 69).  He has mostly worked part-time and is not able to work full-time because he is always extremely nervous, is visually impaired (glasses have been ordered for him), and cannot function around people (other people think he is

strange when he is around them and he would completely "lose it" if he saw people approaching him, and he would be fired immediately). (AR 69-71, 77). The medication he takes makes him calmer. (AR 71, 73). He has been homeless since 2006 and stays at the Armory or a shelter. (AR 72). He tends to "explode" if he is not on (or is in between) his medication. (AR 73-77). A few weeks earlier, he was arrested after he "exploded" when the public library did not have the DVD he wanted, he "goes off" on people at the gym who look at him when he is trying to bathe, and he has lost friends because he 'blew up' at them when they said something out of line. (AR 73-76). He has not consumed alcohol in "a very long time." (AR 78).

In an Adult Function Report dated May 7, 2015, (see AR 615-22), Plaintiff stated that he cannot work because his schizophrenia and depression cause him to hallucinate, be extremely anxious, not be able to be around other people, become overwhelmed easily, and be unable to function "at all." (AR 615). His daily activities involve bathing when he awakes, eating lunch at Jack in the Box, going to the library and using the internet until 5 p.m., cleaning and organizing his room, and going to sleep around 8 p.m. (AR 616-17). He goes to the library daily, using public transportation. (AR 618-19). His hobbies are listening to music (opera) and reading. (AR 619). He does not spend time with other people, has problems getting along with other people and avoids contact with other people because he is unable to handle conversations, is afraid people will use their contacts with him against him, and people see him talking to walls and think he is weird. (AR

619-20).  He can pay attention for only 10 minutes and is not able to finish what he starts and does not follow written instructions or spoken instructions well.  (AR 620).  He does not get along well with authority figures (automatic defensiveness).  (AR 621).  He has been fired or laid off from many jobs because he "exploded" because of his coworkers' complaints and lack of productivity.  (Id.).  He does not handle stress for which he takes medication), and changes in routine well.  (Id.).  His unusual behaviors involve checking often to make sure a door is locked, putting food in a certain position, and cleaning tables to eliminate other people's D.N.A.  (Id.).

At the administrative hearing on February 27, 2018, Plaintiff testified that he has a driver's license but does not drive (he took public transportation to the hearing).  (AR 386).  He is unable to work because he sees faces on walls and talks to and/or argues with them, has horrible low back pain (which he rated at 10 out of 10), and his vision is getting worse (he uses his glasses and a magnifying glass).  (AR 387-89, 394, 397-98).  His back pain is worse in the morning, especially when it is colder, and is aggravated by lifting (which he avoids).  (AR 389).  He takes ibuprofen for his back pain.  (Id.).  He does not have a back brace, has never been to physical therapy, has not had back surgery, and has never been recommended for back surgery ("I don't know if they can afford to.  I don't want to become a paraplegic [sic].").  (Id.).  His medications cause him to use the restroom often, and make him sleepy and irritable.  (AR 388, 390, 398-99).  He can walk a couple of blocks, but the pain causes him to limp.  (AR 392).  He has to limit

his standing and he sits on the train (he is able to sit for some time as long as he keeps moving his back).  (AR 392-93).  He can occasionally bend, stoop, and kneel.  (Id.).  His hands are too dry, and he feels pain when he grabs things.  (AR 393).  He can lift about 30 pounds. (Id.).  He has difficulty sleeping without medication.  (AR 395).  His only hobby or activity is "go[ing] online and watch[ing] music videos at the library" and he no longer reads because of his vision issues.  (AR 396).  His daily activities include waking at 9 a.m., drinking coffee, taking a shower, and going to the library where he spends most of his day watching music videos online.  (AR 396-97).  He goes to two separate libraries -- the city library and then the county library -- because the libraries have two-hour internet limits.  (AR 397).  He does not have any friends and does not socialize with anybody on a regular basis.  (AR 398).

3.   ALJ Fleming's Credibility Findings

After briefly discussing Plaintiff's testimony (see AR 998-97), ALJ Fleming found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms to not be "entirely consistent with the medical evidence and other evidence in the record." (AR 997).  After reviewing the medical evidence in the record, including the opinions of a mental health service program manager, Plaintiff's treating psychiatrist (Dr. Levin), the psychiatric consultative examiner, the medical consultative examiner, and the State Agency physicians (see AR 997-1001), the ALJ wrote: "[T]he undersigned does

18

give the claimant's subjective complaint of back pain the benefit of the doubt, such that the residual functional capacity accounts for some exertional limitations related to back disease." (AR 1001).

ALJ Fleming then discussed the opinion of Dr. Sabshin, another psychiatrist who had treated Plaintiff, see AR 1001, and following that discussion, in the final paragraph of the section concerning the RFC determination, ALJ Fleming noted that Plaintiff had stated, in his Function Report, that he "could pay attention for only 10 minutes, but he would spend his entire day on the internet at the library until 5 pm. ([AR 616, 619]). At the hearing, he claimed he could not maintain concentration, persistence or pace for two hour segments, yet he purposely maximized his time between two libraries that permitted 2 hour time limits on their computers, which he used daily. He still complained of back pain, but denied having a brace, receiving physical therapy, or having any history of back surgery." (AR 1001).

4. Analysis

The Court finds that ALJ Fleming failed to provide clear and convincing reasons for discounting Plaintiff's testimony about the intensity, persistence and limiting effects of his pain and symptoms.

First, ALJ Fleming failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007)(quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen, 80 F.3d at

19

1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, contrary to Defendant's assertions (see Joint Stip. at 25–26), ALJ Fleming did not discount Plaintiff's testimony based on inconsistencies between Plaintiff's testimony and Plaintiff's daily activities or Plaintiff's failure to obtain medical treatment for his back issue. At the end of the section concerning the RFC determination, ALJ Fleming merely "noted" certain portions of the statements Plaintiff had made in his Function Report and Plaintiff's testimony at the February 27, 2018 administrative hearing. Since ALJ Fleming did not clearly discount Plaintiff's testimony based on the specific reasons alleged by Defendant, the Court will not consider them. See Garrison, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts."; citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) and Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)).

In any event, even if ALJ Fleming had discounted Plaintiff's subjective symptom testimony based on an alleged inconsistency between Plaintiff's statement that he could pay attention for only 10 minutes and could not pay attention and concentrate on a task for two hours (AR 398, 620), and Plaintiff's testimony that he daily spent two hours at two different libraries using the internet (AR 396-97, 616, 618-19), this would not be a clear and convincing reason for discounting

20

Plaintiff's testimony about his symptoms and functional limitations. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

It is not clear whether ALJ Fleming considered Plaintiff's testimony at the February 27, 2018 administrative hearing that the only thing he does at the library is "go online and watch music videos" (AR 396). At the hearing, ALJ Fleming did not ask Plaintiff about the amount of attention and/or concentration required to watch music videos at the library. Therefore, the degree to which Plaintiff could perform such a daily activity may not have been inconsistent with Plaintiff's testimony regarding his symptoms and limitations. See Reddick, supra.

Moreover, to the extent that ALJ Fleming may have attempted to discount Plaintiff's testimony based on Plaintiff's failure to obtain medical treatment for his back issue (AR 389 [Plaintiff testified that he did not have a back brace, had not had any physical therapy, and had not had any back surgery]), that also would not have been a clear and convincing reason. See Tommasetti, 533 F.3d at 1039 (an ALJ may discount a claimant's credibility based on, inter alia, an "unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment"; citation omitted); <u>Parra v. Astrue</u>, 481 F.3d 742, 750-51 (9th Cir. 2007)("The ALJ also noted that [the claimant's] physical ailments were treated with over-the-counter pain medication. We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."; citation omitted). Here, Plaintiff's failure to obtain medical treatment for his back issue may have been the result of his financial issues (<u>see</u> AR 72 [Plaintiff testified at the January 9, 2013 administrative hearing that he has been homeless since 2006]), 616 [Plaintiff stated in the Adult Function Report submitted on May 7, 2015 that he ate only one meal a day]). <u>See</u> <u>Regennitter v. Commissioner of Soc. Sec. Admin.</u>, 166 F.3d 1294, 1297 (9th Cir. 1998)(". . . [W]e have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it[.]"); <u>Gamble v. Chater</u>, 68 F.3d 319, 322 (9th Cir. 1995)("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.")(quoting <u>Gordon v. Schweiker</u>, 725 F.2d 231, 237 (4th Cir. 1984)). In any event, even if Plaintiff's testimony concerning his back issue was not credible, that would not be relevant to the credibility of Plaintiff's testimony about the symptoms and limitations related to his mental impairment.

Third, while the ALJ also found there was a lack of objective medical evidence supporting Plaintiff's testimony concerning his symptoms and limitations, this factor cannot, by itself, support an adverse finding about Plaintiff's testimony. <u>See</u> <u>Trevizo</u>, 871 F.3d at

679 (once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'")(quoting <u>Robbins</u>, <u>supra</u>); <u>see also</u> SSR 16-3p, 2017 WL 5180304, *7 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record. . . . However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment related-symptoms alleged by the individual.").

Because the Court finds that the the ALJ did not discount Plaintiff's symptom testimony on legally permissible grounds, the Court is unable to defer to the ALJ's credibility determination. <u>Cf.</u> <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1464 (9th Cir. 1995)(the court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by specific findings justifying that decision)(citations omitted)[14].

_____

[14]   Plaintiff's second claim of error is that ALJ Fleming erred in failing to find that Plaintiff's mental impairment met Listing of Impairments 12.03. Petitioner alleges, in part, that ALJ Fleming's findings with respect to the "B paragraph" criteria, specifically, that Plaintiff had mild limitations in understanding, remembering or applying information and in interacting with others (AR 995), was unsupported by the evidence. (<u>See</u> Joint Stip. at 6-8, 10-11).

It appears to the Court, without deciding, that ALJ Fleming's findings with respect to those "B paragraph" criteria may not have been supported by substantial evidence and may not have been a rational interpretation of the record. <u>See</u> <u>Noah v. Berryhill</u>, 732 Fed.Appx 520, 521 (9th Cir. 2018)("Because the ALJ supported her conclusions concerning [the claimant's] level of limitation with substantial evidence and provided a rational interpretation of the record, we will
(continued...)

1

2

**C.    Remand Is Warranted**

3

4    The decision whether to remand for further proceedings or order an

5    immediate award of benefits is within the district court's discretion.

6    <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no

7    useful purpose would be served by further administrative proceedings, or

8    where the record has been fully developed, it is appropriate to exercise

9    this discretion to direct an immediate award of benefits.  <u>Id.</u> at 1179

10    ("[T]he decision of whether to remand for further proceedings turns upon

11    the likely utility of such proceedings.").  However, where, as here, the

12    circumstances of the case suggest that further administrative review

13    could remedy the Commissioner's errors, remand is appropriate.  <u>McLeod</u>

14    <u>v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>Harman</u>, 211 F.3d at 1179-

15    81.

16

17    Since ALJ Fleming failed to properly assess Plaintiff's symptom

18    testimony, remand is appropriate.  Because outstanding issues must be

19    resolved before a determination of disability can be made, and "when the

20    record as a whole creates serious doubt as to whether the [Plaintiff]

21

22    [14]    (...continued)
uphold the ALJ's decision."); <u>Jennifer H. v. Saul</u>, 2020 WL 3128875, *12
23    (N.D. Cal. June 12, 2020)("The question, however, is not whether other
evidence in the record might speak to the paragraph B criteria but
24    whether the AlJ's determination is supported by substantial evidence.";
citing <u>Noah</u>, <u>supra</u>).

25    Since the resolution of Plaintiff's second claim of error
26    appears to depend on the credibility of Plaintiff's subjective symptom
testimony (which is the basis for the Court's remand) as well as the
27    assessment of the opinions of Plaintiff's treating psychiatrists and the
consultative examining psychiatrist (<u>see</u> Joint Stip. at 6-11), these
28    issues are appropriately left for consideration on remand.

is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects.  Burrell, 775 F.3d at 1141 (citations omitted).[15]

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).


LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: September 23, 2020

                                    _____
                                           /s/
                                       ALKA SAGAR
                            UNITED STATES MAGISTRATE JUDGE

---

[15]    The Court has not reached any other issue raised by Plaintiff except to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014).